IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMPSYCH INTERNATIONAL, INC. and COMPSYCH CORPORATION, | ) ) ) | |
| Plaintiffs | ) ) ) | |
| v. | ) ) ) | Case No. FILED: JULY 23, 2008 08CV4177 |
| JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., | ) ) ) | JUDGE ST.EVE MAGISTRATE JUDGE ASHMAN TG |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs ComPsych International, Inc. ("CP International") and ComPsych Corporation ("CP Corporation") (sometimes, collectively, "Plaintiffs"), by their attorneys, Novack and Macey LLP, for their Complaint for Declaratory Relief against Defendants JPMorgan Chase & Co. ("JPMC") and JPMorgan Chase Bank, N.A. ("JPMC Bank") (sometimes, collectively, "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1.  This action seeks a declaration that the existing contract by and between JPMC and CP International (the "UK Agreement") continues to remain in full force and effect, notwithstanding Defendants contention that a new contract was entered into which supersedes and replaces the UK Agreement. Plaintiffs deny that any new contract has been entered into because, among other things, JPMC did not properly or validly accept CP Corporation's offer to enter into such a new contract.

**THE PARTIES**

2.     Plaintiff CP International is an Illinois corporation, with its principal place of business located in Chicago, Illinois.

3.     Plaintiff CP Corporation is an Illinois corporation, with its principal place of business located in Chicago, Illinois. CP Corporation and CP International share common ownership.

4.     Defendant JPMC is a Delaware corporation, with its principal place of business located in New York, New York.

5.     Defendant JPMC Bank is a national banking association with its main office in Columbus, Ohio, and its principal place of business located in New York, New York. JPMC Bank is a subsidiary of Defendant, JPMC.

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as this case involves citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to (a) 28 U.S.C. § 1391(a)(1), as Defendants reside in this judicial district (both having offices in, and doing business in, Cook County, Illinois); and (b) 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to the claim asserted herein occurred in this judicial district.

**GENERAL ALLEGATIONS**

**The Parties And Their Business**

8.     CP Corporation and CP International are providers of Employee Assistance Programs -- or "EAPs." An EAP is a confidential service providing professional assistance to companies'

employees and their families. EAPs are provided by employers to help their employees manage personal issues that may affect their job performance, before those issues cause disruptions in the workplace. As a result of the EAPs, employees stay more productive on the job and employers are able to better control health costs. Additionally, with high quality EAPs -- such as those provided by Plaintiffs -- employers are able to attract and retain excellent employees, resulting in superior productivity, performance and profitability. Plaintiffs contract with numerous service providers in connection with the EAPs they offer.

9. JPMC is a global financial services firm with assets of approximately $1.5 trillion, and operations in more than 50 countries. JPMC provides, individually and through its affiliates -- such as JPMC Bank -- numerous financial services to millions of consumers around the world, including many of the world's most prominent corporate, institutional and government clients.

10. JPMC is a publicly traded company. JPMC and its affiliates employ over 180,000 people worldwide.

**The Parties' UK Agreement**

11. On August 22, 2003, JPMC entered into a Letter of Agreement with CP International (the previously referenced "UK Agreement"), pursuant to which CP International would provide a custom-tailored international EAP program for JPMC's employee population in the United Kingdom.

12. The UK Agreement is presently in effect and will remain in effect for years to come. CP International is currently performing services thereunder for JPMC's United Kingdom employees. The UK Agreement provides profits to CP International that are well in excess of $75,000.00 per year.

**JPMC Requests Proposals For Global EAP Services**

13. On September 17, 2007, JPMC issued a Request for Proposal ("RFP") to CP Corporation and other EAP providers. The RFP requested proposals from each provider for a comprehensive EAP that JPMC could use worldwide or in one or more of five regions, each of which regions was to be priced separately. The five regions were: (a) United States; (b) Canada; (c) Latin American and the Carribean; (d) Europe, Middle East and Africa ("EMEA"); and (e) Asia and the Pacific.

14. At the time the RFP was issued to CP Corporation, CP International was already providing an EAP for JPMC's employees in the United Kingdom pursuant to the UK Agreement.

**CP Corporation Sends A Global Proposal**

15. On October 15, 2007, CP Corporation submitted a proposal for an EAP program to cover all of JPMC's 180,000+ employees around the globe (the "CPC Proposal"). Pursuant to the RFP, the CPC Proposal provided separate pricing for each of the five regions, including EMEA.

16. The RFP did not require, and the CPC Proposal did not include, pricing on a country-specific basis within the regions. Thus, for example, the RFP did not request a price for just the United Kingdom, and CP Corporation did not provide such pricing in the CPC Proposal.

**JPMC Rejects The CPC Proposal**

17. On June 3, 2008, Adam Gotskind, in-house counsel for each of CP Corporation and CP International, received a call from Ian Shea, JPMC's Vice President, Sourcing & Procurement Services, concerning the CPC Proposal that CP Corporation had sent in response to the RFP.

18. During the June 3 call, Mr. Shea told Mr. Gotskind that JPMC had decided to "go in a different direction" for EAP services. Mr. Shea very specifically stated that JPMC had decided to

reject the CP Proposal and accept, instead, the proposals of other EAP providers, and in fact went so far as to provide Mr. Gotskind with the names of those EAP providers whose proposals were being accepted.

**JPMC Asks CP International To Terminate The UK Agreement**

19. In response to Mr. Shea's statements – and during the same call -- Mr. Gotskind, reminded Mr. Shea, among other things, that even though JPMC had decided to reject CP Corporation's CPC Proposal, the UK Agreement with CP International was, and would remain, in full force and effect.

20. However, JPMC did not want to remain bound by the UK Agreement, the continued existence of which was inconsistent with JPMC's desire to move its EAP business to other providers. Accordingly, it surreptitiously concocted a plan that it believed would, if successful, give it the option to prematurely extricate itself from the UK Agreement.

21. As part of its plan -- and despite its previous rejection of the CPC Proposal -- JPMC on July 3, 2008 sent CP Corporation a letter purporting to partially accept the CPC Proposal -- but only for JPMC's United Kingdom employees. JPMC also sent a Master Services Agreement for CP Corporation's signature, but not in the name of JPMC. Instead, it was in the name of, and already signed by, JPMC Bank.

22. The supposed partial acceptance of the CPC Proposal, which came as a complete surprise to Plaintiffs, was a total about-face from JPMC's prior rejection of the CP Proposal and representation that JPMC would be accepting the proposals, and engaging the services, of EAP providers who were Plaintiffs' competitors.

5

23. In contrast to the UK Agreement, the proposed Master Services Agreement purports to be terminable at will (upon thirty days notice). Moreover, it purports to supercede all prior agreements between JPMC Bank and its affiliates, and CP Corporation and its affiliates (which, under the definitions of affiliates used therein and in the RFP, would include, respectively, JPMC and CP International). Thus, JPMC obviously was seeking to have CP Corporation agree to and enter into a Master Services Agreement which would supercede the UK Agreement, and thereby afford JPMC the opportunity to avoid its long-term contract for United Kingdom EAP services, and replace it with one terminable at will – which termination it could exercise immediately after October 1, 2008, and thereby end its relationship with both of the Plaintiffs by no later than November 1st of that year.

24. However, JPMC has failed to achieve its objective, because its purported partial acceptance of the CPC Proposal was and is improper and invalid, for several reasons.

**The Purported Acceptance Of The CPC Proposal Was Not Valid**

25. Although the CPC Proposal was supposed to remain open for acceptance or rejection for 270 days – i.e., until July 11, 2008 -- on June 3, 2008, JPMC explicitly rejected the CPC Proposal, explaining to CP Corporation that JPMC intended to contract with other EAP providers. Once the CPC Proposal was rejected, JPMC could not unilaterally revive it by sending a subsequent acceptance.

26. Further, even if the CPC Proposal were still open, JPMC did not accept it as offered by CP Corporation. As required by the RFP, the CPC Proposal contained group pricing for five separate regions. There was no separate pricing offered for any specific country or location within the any of the five pricing regions. Specifically, there was no pricing offered for "just" the United

Kingdom (which was merely one of many constituent parts of the broad EMEA region). Nevertheless, JPMC's purported acceptance was only for the United Kingdom -- an offer that CP Corporation did not make.

27. Indeed, because CP Corporation was group-quoting the entire Europe, Middle East and Africa region in the CPC Proposal -- and not just the United Kingdom -- the collective regional price was lower than the price currently charged by CP International under the UK Agreement. By purporting to accept an EAP just for the United Kingdom, JPMC was attempting to get the benefit of regional (and hence volume) pricing without affording CP Corporation the high volume full regional service upon which the pricing was predicated.

28. In short, the CPC Proposal did not include an offer to serve just the United Kingdom, nor would CP Corporation have made such an offer, because CP International was already serving JPMC's United Kingdom employees, at a higher per-employee price, and for an assured term of years.

**The CPC Proposal Is Dead**

29. As set forth above, JPMC expressly rejected the CPC Proposal on June 3, 2008, and could not thereafter accept it.

30. Further, even if the CPC Proposal had not been rejected in June, or even if it somehow survived the rejection by JPMC, by sending the non-conforming acceptance to CP Corporation on July 3, 2008, JPMC again rejected the CPC Proposal by making a non-conforming counter-offer, which CP rejected and repudiated in writing on July 23, 2008.

31. In all events, the RFP's "keep offer open" date of July 11, 2008 has now passed, and – by letter dated July 23, 2008 -- CP Corporation expressly withdrew the CPC Proposal.

7

32.     For any one or more of the foregoing reasons, among others, the CPC Proposal was never validly accepted, and no contract (or agreement to enter into a contract) was formed thereby between CP Corporation, on the one hand, and JPMC and/or JPMC Bank, on the other. Instead, JPMC and CP International are still bound by and under the UK Agreement.

**Request For Declaratory Judgment**

33.     By reason of the foregoing, the CPC Proposal was never accepted, and no contract (or agreement to enter into a contract) was formed pursuant to the CPC Proposal. Further, the UK Agreement remains in full force and effect.

34.     Nevertheless, Defendants appear to contend that the CPC Proposal was accepted, and that CP Corporation is required to sign the Master Services Agreement, which would, per its terms, terminate and supercede the UK Agreement.

35.     Plaintiffs vigorously dispute Defendants' position, and believe it is merely a subterfuge to obtain an early termination of the UK Agreement that would otherwise be unavailable.

36.     There is an actual controversy between the parties as to whether their ongoing rights and obligations as to each other with regard to United Kingdom EAP services will arise, from and after October 1, 2008, under (a) the UK Agreement; or (b) the CPC Proposal and the Master Services Agreement.

37.     The declaration requested herein will terminate the aforesaid controversy or, at least, some part thereof.

WHEREFORE, Plaintiffs demand judgment in their favor and, against Defendants, as follows:

A. Declaring that the UK Agreement remains in full force and effect, and that no contract or agreement, nor any agreement to enter into a contract, was formed between CP Corporation and either Defendant as a result of the CPC Proposal and any purported acceptance (in whole or in part) thereof; and

B. Granting Plaintiffs such other and further relief as is appropriate.

                Respectfully submitted,

                COMPSYCH INTERNATIONAL, INC. and
                COMPSYCH CORPORATION


                By:   s/ Michael A. Weinberg
                        One of Their Attorneys

Stephen Novack
Michael A. Weinberg
Richard G. Douglass
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc. # 233227